[No. 2454-1.    Divison One.    November 18, 1974.]

THE STATE OF WASHINGTON, *Appellant,* v. LEON MCKENZIE *et al., Respondents.*

THE STATE OF WASHINGTON, *Appellant,* v. CHARLES ETTA HOLLAND, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. SHIRLEY RUTH EDWARDS, *Respondent.*

Christopher T. Bayley, *Prosecuting Attorney, and* Seaton M. Daly, Jr., *Deputy,* for appellant.

*Paul & Johnson* and *Irving C. Paul, Jr.,* for respondents.

WILLIAMS, J.—The defendants, Leon McKenzie, Joan McKenzie, Charles Etta Holland and Shirley Ruth Edwards, were charged with violation of the Uniform Controlled Substances Act. Leon McKenzie moved for severance and for suppression of evidence seized in his home and automobile. The court granted the motion for severance and reserved a decision upon the motion to suppress. The trial before the court sitting with a jury resulted in a verdict of guilty. The court then granted McKenzie's motion to suppress and ordered a new trial. The other defend-

ants' motions to suppress were also granted. The State appeals from the order granting a new trial and from each of the orders suppressing the evidence.

■  We may not consider the orders of suppression as to Joan McKenzie, Charles Etta Holland and Shirley Ruth Edwards because they are not final. *State v. LeRoy*, 84 Wn.2d 48, 523 P.2d 1185 (1974); *State v. Whitney*, 69 Wn.2d 256, 418 P.2d 143 (1966).

The facts essential to be stated are these: Seattle and Mercer Island police officers established surveillance of McKenzie's house from several points nearby, because a reliable informant had stated that on that day he saw heroin being sold in the McKenzie house and that a substantial amount of heroin remained there. McKenzie had been known to the police as a dealer in heroin for several years. At the time that the officers watched the premises, an officer was applying to a district court judge at the King County Courthouse for a search warrant. McKenzie and another man came out of the house and entered an automobile which was parked in a garage at the back of the property. McKenzie drove the car out and stopped in the driveway. The following unchallenged findings of the trial court tell what then happened:

> That upon the approach of the two police officers, Leon McKenzie leaned upon the horn of the vehicle.

Finding of fact No. 5, in part;

> That Seattle Police Officers arriving at the front door of the residence could hear the horn blowing in the rear and immediately broke and entered the residence without knocking or in any way announcing their identity as police officers or announcing their purpose in demanding entry. Upon entry the police officers arrested Joan McKenzie, Shirley Ruth Edwards and Charlesetta [*sic*] Holland and detained them in the living and dining area of the residence.

Finding of fact No. 6;

> That no search for physical evidence or drugs was made by any police officer until a search warrant was in

fact obtained. That a substantial quanity[sic] of heroin and a lesser of cocain [sic] and methadone was found in the search.

Finding of fact No. 7;

That the police officers who made the forced entry into the residence could reasonably have drawn the inference that the defendant, Leon McKenzie, was sounding his horn as a warning to occupants.

Finding of fact No. 8.

The court concluded that the officers properly arrested McKenzie because they had probable cause to believe that he had committed a felony, that if the officers had a search warrant it would have been reasonable for them to enter the house without knocking because of the horn blowing, and that no search was made until after the search warrant was issued. The court then decided that all physical evidence taken from the house and testimony as to all observations made following the forced entry must be suppressed. We believe that the officers acted reasonably in precipitously forcing entry without a warrant, and that the order suppressing the evidence and granting a new trial was incorrect.

■ As seen, the police officers had probable cause to believe that there were illegal narcotics in the residence of a known suspect. They did not intrude, but rather stood by while awaiting the arrival of a search warrant. When McKenzie attempted to leave and then blew a warning signal, the officers justifiably entered the house without knocking and without a search warrant. The following quotation from *State v. Smith,* 37 N.J. 481, 181 A.2d 761 (1962), adopted by the Washington State Supreme Court in *State v. Young,* 76 Wn.2d 212, 216, 455 P.2d 595 (1969), explains why:

We must identify precisely what is involved. We are not dealing with the sufficiency of the basis for a search. Probable cause existed. The right to invade the privacy of the occupant was clear. And it is of no moment that a search warrant had not issued; the problem would be the

same if the magistrate's warrant were in hand. The State was entitled to seize the contraband. The nature of the contraband was such that if the officers' mission had first been announced, the articles likely would have literally gone down the drain. . . .

*See also Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1967); *State v. Johnson,* 11 Wn. App. 311, 522 P.2d 1179 (1974); *State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973); *Coleman v. Reilly,* 8 Wn. App. 684, 508 P.2d 1035 (1973); *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972). As the court found, the subsequent search of the house was made under the authority of a warrant. No question has been raised as to its validity.

The order granting a new trial is reversed, and the court is directed to enter judgment on the verdict.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied January 8, 1975.

Review denied by Supreme Court March 10, 1975.