988 P.2d 20 (1999)
97 Wash.App. 813
STATE of Washington, Respondent and Cross-Petitioner,
v.
Stephen WHELCHEL, Petitioner.
No. 17317-8-III.
Court of Appeals of Washington, Division 3, Panel One.
November 4, 1999.
Reconsideration Denied December 14, 1999.
*22 John H. McKean, Moses Lake, Stephen R. Hormel, Spokane, Counsel for Petitioner.
John D. Knodell, III, Pros. Atty., Ephrata, Counsel for Respondent.
*21 BROWN, J.
Stephen Whelchel's Grant County 1987 conviction for first degree murder was vacated by a December 1, 1997 federal writ of habeas corpus judgment. Both parties immediately appealed to the Ninth Circuit. Because no stay was requested, Mr. Whelchel was returned for retrial. Mr. Whelchel moved for speedy trial dismissal under CrR 3.3(c)(5), arguing the rule applied from his original arraignment date in 1986. Rejecting this argument, the trial court decided by analogy that CrR 3.3(d)(3) applied instead. We granted discretionary review. The Ninth Circuit stayed its appeal pending our decision. Although speedy trial is a moot issue if the Ninth Circuit reverses the habeas corpus judgment, we proceed in light of the Ninth Circuit stay. We decide no state criminal rule of procedure applies to these facts directly or by analogy. We apply a constitutional speedy trial analysis, find no violation, and affirm.

FACTS
In 1986, Mr. Whelchel, was charged with first degree murder under Grant County cause XX-X-XXXXX-X. In 1987, a jury convicted Mr. Whelchel as charged. The conviction was affirmed at both levels of Washington appellate courts. State v. Whelchel, 55 Wash.App. 1043 (1989) review granted, 114 Wash.2d 1008, 790 P.2d 168 (1990); State v. Whelchel, 115 Wash.2d 708, 801 P.2d 948 (1990).
For reasons not relevant to this appeal, on December 1, 1997, a federal district court granted a habeas corpus judgment to Mr. Whelchel against Tana Wood, Superintendent at the Walla Walla penitentiary. The judgment is based upon a November 18, 1997 memorandum order filed on November 19. Both parties immediately filed appeals to the Ninth Circuit. On December 30, 1997, Mr. Whelchel requested his release during the federal appeal process as Tana Wood had failed to properly request a stay. On January 23, 1998, the federal district court granted Mr. Whelchel's motion, ordering release by January 26 or retrial. On January 23, 1998, the State re-filed the murder charge under cause XX-X-XXXXX-X. Mr. Whelchel was immediately transported from Walla Walla to Grant County. On January 26, he appeared for arraignment in open court.
Mr. Whelchel objected to his arraignment and asked for a speedy trial dismissal under the rearraignment provisions of CrR 3.3(c)(5), based upon the combined days that had expired under the original cause number. The State urged the court to consider any speedy trial issue under CrR 3.3(d)(4), as a remand after appeal or stay. The court and the parties agreed no Washington court rule specifically applied to the exact facts presented. The court observed it had never received or been served with a copy of any federal order. Ultimately, the court decided to apply by analogy the rule pertaining to mistrial and new trial, CrR 3.3(d)(3). Then, the trial court denied Mr. Whelchel's speedy trial motion by deciding the 60-day speedy trial limit began running from entry of the federal court's judgment on December 1, 1997, and merely 58 days had expired against the 60-day limit. The court consolidated the 1998 case with the 1986 case, and ten dismissed the 1998 case without prejudice. Trial was set for January 28 but was continued to February 4, due to defense counsel's illness.
On January 28, the federal court telephonically heard and granted an emergency motion to stay the effectiveness of its November 18, 1997 memorandum order and December 1, 1997 judgment. The stay order was entered on February 2, 1998, relating back to January 28, and is effective until the 14th day following the issuance of the Ninth Circuit's mandate on the pending appeal subject to further order of the Ninth Circuit. The February 2 order was transmitted the same day to the trial court. On February 3, the trial court struck the February 4 trial date in light of the federal district court stay, and ordered Mr. Whelchel returned to Walla Walla. On May 21, we granted discretionary review. The State cross-appealed the trial *23 court's decision to apply CrR 3.3(d)(3) by analogy. On November 18, the Ninth Circuit granted Mr. Whelchel's "Motion to Hold Appeal in Abeyance Pending Resolution of Dispositive State Appeal."

ANALYSIS

A. Applicability of Speedy Trial Rules
The first issue is whether the trial court erred by denying Mr. Whelchel's speedy trial motion under CrR 3.3(c)(5) and concluding by analogy that CrR 3.3(d)(3) applies when calculating the speedy trial limits following a federal grant of habeas corpus and order release or new trial. The State contends the trial court mistakenly decided to treat a retrial after successful collateral attack by federal habeas corpus as a mistrial under CrR 3.3(d)(3) rather than a retrial under CrR 3.3(d)(4). Alternatively, the State contends constitutional speedy trial principles apply.
The choice of law applicable to facts, its interpretation, and its application to the facts are matters of law reviewed de novo. State v. McIntyre, 92 Wash.2d 620, 622, 600 P.2d 1009 (1979); State v. Johnson, 96 Wash.App. 813, 981 P.2d 25, 26 (1999); State v. Carlyle, 84 Wash.App. 33, 35-36, 925 P.2d 635 (1996). The rules of statutory construction apply to court rules. State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993) (interpreting CrR 3.3). Ambiguous court rules are interpreted in the same manner as ambiguous statutes. Miller v. Arctic Alaska Fisheries Corp., 133 Wash.2d 250, 258, 944 P.2d 1005 (1997) (citing to Greenwood among other cases). Where a statute or rule is unambiguous, the drafter's intent is determined from the language of the rule. State v. Simms, 95 Wash.App. 910, 915, 977 P.2d 647 (1999).
Speedy trial rules are a framework to strictly implement, not substitute for the constitutional rights to speedy trial. State v. Wieman, 19 Wash.App. 641, 644-45, 577 P.2d 154 (1978). Our Supreme Court has, for example, recently and unanimously emphasized the distinction between procedural and substantive constitutional requirements in the context of CrR 3.5. State v. Williams, 137 Wash.2d 746, 975 P.2d 963 (1999).
Numerous fact patterns exist where the speedy trial rules do not apply. Wieman, 19 Wash.App. at 645, 577 P.2d 154 (citing State v. Parmele, 87 Wash.2d 139, 550 P.2d 536 (1976); State v. Elizondo, 85 Wash.2d 935, 540 P.2d 1370 (1975); State v. LeRoy, 84 Wash.2d 48, 523 P.2d 1185 (1974); State v. Curry, 14 Wash.App. 775, 545 P.2d 1214 (1976)). In LeRoy the court commented: "While CrR 3.3 [an older version] does not specifically exclude the time on appeal from the computation of the time allowed for a speedy trial, it is apparent that it must be excluded. The superior court loses jurisdiction when a notice of appeal is filed." LeRoy, 84 Wash.2d at 50, 523 P.2d 1185. The LeRoy court pertinently observed under the circumstances of appeal, "the superior court cannot try a defendant and consequently the time limitations of CrR 3.3 cannot be invoked to demand trial while the appeal is pending." LeRoy, 84 Wash.2d at 51, 523 P.2d 1185.[1]
This record reflects that both parties and the trial court agreed that no specific speedy trial rule explicitly applied to our particular facts. Even so, without the necessary explicit language the rules were argued to the trial court by analogy. If no rule explicitly or implicitly applies, it stands to reason under Wieman that it is unnecessary to interpret inapplicable rules or to apply them by analogy in all cases no matter how thoughtful or well intentioned the effort may be. The important distinction to be made here is the difference between an inapplicable rule and one that is applicable, but ambiguous. With this background in mind, we begin our examination of the parties' contentions.
Mr. Whelchel argues that CrR 3.3(c)(5) is not ambiguous and is clearly applicable. CrR 3.3(c)(5) provides:
If a defendant is required to be rearraigned on a charge that arises out of *24 the same occurrence and has the same elements of proof as those upon which the defendant was previously arraigned, the time for trial established in this section shall commence on the date of the previous arraignment in superior court.
Mr. Whelchel contends if CrR 3.3(c)(5) applies, then the new trial ordered by the federal court would need to commence within the original speedy trial limit established in 1986, minus periods specifically excluded by the rule.
First, Mr. Whelchel was neither arraigned nor "re-arraigned" on January 26, 1998. CrR 3.3(c)(6) defines an arraignment as "the date on which a plea is entered to the charge." It is undisputed that Mr. Whelchel did not enter a plea to the new charge, nor was a plea entered for him. Instead, the second charge was dismissed and the court proceeded on the first charge. Mr. Whelchel pleaded not guilty to the first charge on October 27, 1986, and that plea is not being challenged. Second, rearraignment is not necessary when a case is remanded for a new trial. Rather, it is required when a case has been dismissed without prejudice and then re-filed. CrR 3.3(g)(4); see State v. Estabrook, 68 Wash.App. 309, 842 P.2d 1001, review denied, 121 Wash.2d 1024, 854 P.2d 1084 (1993). Rearraignment is also necessary when there has been a substantial amendment to the information. State v. Hurd, 5 Wash.2d 308, 312, 105 P.2d 59 (1940). No substantial amendment is before us. Thus, CrR 3.3(c)(5) is inapplicable to our facts. Accordingly, Mr. Whelchel's argument fails. We hold CrR 3.3(c)(5) does not require dismissal for failure to provide Mr. Whelchel a speedy trial under these facts.
In the interests of judicial economy and prevention of delay, the remaining analysis of this issue provides guidance to the trial court as the facts develop. For example, should the Ninth Circuit affirm the grant of habeas corpus and the State elects to retry Mr. Whelchel, what rule, if any, applies? The State argues in its cross-appeal for the application of CrR 3.3(d)(4) instead of CrR 3.3(d)(3), as it did at the trial court. CrR 3.3(d)(4) provides:
(4) Trial After Appeal or Stay. If a cause is remanded for trial after an appellate court accepts review or stays proceedings, the defendant shall be brought to trial not later than 60 days after ... receipt by the clerk of the superior court of the mandate or other written order, if after such appearance the defendant is detained in jail, or not later than 90 days after such appearance if the defendant is thereafter released whether or not subject to conditions of release.
A number of problems arise when attempting to fit what may be a round peg into a square hole in so far as the plain language of the rule.
Initially, we consider whether a federal habeas corpus proceeding constitutes an "appeal" for purposes of applying the rule. Mr. Whelchel contends the term "appeal" in the heading of CrR 3.3(d)(4) is ambiguous because the term can be reasonably interpreted to either include or exclude a federal habeas corpus proceeding. See Western Telepage, Inc. v. City of Tacoma, 95 Wash.App. 140, 145, 974 P.2d 1270 (1999) (a rule is ambiguous, so that the court may go beyond its language, if it is susceptible of two or more reasonable interpretations). However, a heading, although helpful to focus a reader on the substantive content of a rule, is not part of the rule. Miller v. Patterson, 45 Wash.App. 450, 455, 725 P.2d 1016 (1986). This is consistent with a statement from our earlier appellate rules: "Rule and subdivision headings do not in any manner affect the scope, meaning or intent of the provisions of these rules." Former CAROA 2(i); see Myers v. Harris, 82 Wash.2d 152, 154, 509 P.2d 656 (1973). Thus, we must disagree with Mr. Whelchel that the use of the term "appeal" in the heading creates any critical ambiguity.
The State cites to the American Bar Association Standards on Speedy Trial in support of its position that "appeal" in this context includes a habeas corpus petition. See State v. Rohatsch, 23 Wash.App. 734, 599 P.2d 13 (1979) (citing State v. Striker, 87 Wash.2d 870, 873, 557 P.2d 847 (1976)). These standards provide:
The time for trial should commence running, without demand by the defendant, as follows:
. . . .
(c) if the defendant is to be tried again following a mistrial, an order for a new trial, or an appeal or collateral attack,.... *25 (Emphasis added). 2 American Bar Ass'n, Standards for Criminal Justice, Std., 12-2.2, at 12.17 (2d ed.1980). The ABA standard is similar to CrR 3.3(d)(4), except that it specifically includes "collateral attack" as an event triggering a new speedy trial period. A collateral attack is defined as any form of post-conviction relief other than a direct appeal, including a habeas corpus petition. RCW 10.73.090(2).
We conclude the term "appeal" in the heading of CrR 3.3(d)(4) does not affect the operative portion of the rule. We hold the rule is inclusive of a remand following collateral attack as well as reversal following appeal. However, for the reasons discussed below, when a successful federal habeas corpus is involved, a case-by-case analysis of the facts will be required to determine the applicability of CrR 3.3(d)(4), or alternatively, the application of constitutional principles.
While CrR 3.3(d)(4) is inclusive of remands after collateral attack and indeed, federal habeas corpus procedures are similar in effect to our state personal restraint procedures, our state rules do not control in the federal courts. The federal procedures here, for example, did not result in a direct remand to a state trial court by means of a "mandate or other written order" as required by our state procedures. Rather, as noted above, the federal proceedings are directed to a penitentiary superintendent primarily for the purpose of releasing a person held in custody. As such, the federal proceedings are not mainly directed at the State and its executive agents to require another prosecution under state law or the trial court or its clerk for administration of state criminal laws and procedures.
Next, we consider whether the federal district court constitutes an "appellate court" in light of the civil nature of habeas corpus proceedings and the notable procedural differences between a federal habeas corpus petition and a state personal restraint petition. At the same time, we consider the interrelated implications flowing from the fact that Tana Wood, not Grant County or the State of Washington, is the sole named party to the federal litigation in view of the alternative release or retrial provisions of the federal order. Tana Wood is represented by the Attorney General, not the Grant County Prosecuting Attorney. In fairness, this circumstance likely contributed to a lack of local notice and fostered an environment for hasty decisions evidenced by the flurry of activity by local officials designed to confront the alleged speedy trial problem. In any event, the fact that the federal district court is not technically an appeal court under these circumstances is not material because its decision has the same practical and substantive effect upon a state trial court conviction.
The last point is a significant circumstance, aptly noted by the trial court; the superior court did not have notice of the federal court orders as would naturally result from a higher state court complying with the requirements of CrR 3.3(d)(4). The record verifies the lack of receipt by the clerk of the Grant County Superior Court of anything remotely the equivalent of a "mandate or other written order" until the February 2 order was transmitted by facsimile to the trial court; a time well after the events we are urged to view as critical to the outcome. We do not know who transmitted the order; however, we do not believe that makes any difference, as it is actual notice. Notice to the trial court is an important factor to consider because the rule clearly contemplates an orderly means for retrial after remand or stay that provides certain speedy trial limits after both notice and the defendant's appearance in the trial court.
For example, the need to have the defendant in court was noted at the January 26 hearing when the trial court correctly observed while discussing CrR 3.3(d)(4): "If it does apply, it requires that there be filed with the clerk of this court a copy of the order, in essence a mandate saying here's what the higher court has done. That has still not occurred." This supports our conclusion that CrR 3.3(d)(4) may be applicable by analogy depending on the facts in a particular case when a federal grant of habeas corpus is involved. As we have pointed out, the facts before us are not sufficiently developed to permit an application of CrR 3.3(d)(4) by analogy. The language of CrR 3.3(d)(4) is clear and explicit; the facts simply do not invoke the rule. The problem is not ambiguity.
*26 We note in passing that CrR 3.3(d)(3) is also inapplicable under these facts, directly or by analogy. CrR 3.3(d)(3) determines the speedy trial period if the superior court grants a mistrial before a verdict, or if the superior court grants a new trial after the verdict. Neither of these circumstances is present here. A "Superior Court" does not include a federal district court; the term "Superior Court" is specific and unambiguous. Furthermore, the superior court acts as a trial court not a review court, as does the federal district court in the context of these facts. A trial court may order a "mistrial" for different reasons than are germane in a federal habeas corpus proceeding. Thus, we must also reject the trial court's conclusion that the speedy trial clock began running on December 1, 1997. In sum, the circumstances of this case do not permit either CrR 3.3(d) or (4) to be applied by analogy.

B. Constitutional Right to Speedy Trial
The issue is whether under these facts Mr. Welchel's constitutional right to a speedy trial has been violated.
When procedural rules ensuring substantive rights are inapplicable, constitutional principles still apply. U.S Const. amend. VI; Const. art. I, sec. 22 (amend.10); State v. Fladebo, 113 Wash.2d 388, 779 P.2d 707(1989). Under Fladebo at page 393, 779 P.2d 707:
The threshold for a constitutional violation is much higher than that for a violation of the superior court rules. The actual determination of a violation of the constitutional speedy trial right "necessitates a functional analysis of the right in the particular context of the case." Barker v. Wingo, 407 U.S. 514, 522, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). In Barker, the United States Supreme Court devised a balancing test for determining when a criminal defendant's right to a speedy trial is violated. The Court identified four major factors to consider in this balance: the length of the delay, the reason for the delay, whether or not the defendant asserted the right, and the prejudice to the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182. The factors must be considered together "with such other circumstances as may be relevant." Barker, 407 U.S. at 533, 92 S.Ct. 2182; see also Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
Generally, no set time is applicable; we examine the facts to determine whether a reasonable time has elapsed. State v. Higley, 78 Wash.App. 172, 185, 902 P.2d 659, review denied, 128 Wash.2d 1003, 907 P.2d 296 (1995) (citing Barker v. Wingo, 407 U.S. 514, 537, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (White, J., concurring)). A violation of the constitutional right to a speedy trial, under either constitution is more difficult for a defendant to prove than a violation of the rule.
In Fladebo, the court applied the balancing test set forth in Barker, and identified four factors to consider in determining whether the defendant's constitutional right to a speedy trial was violated. Here, in light of the 58-day delay from December 1, 1997, the complexity of overlaying the federal proceedings onto the state court proceedings, the delay of Mr. Whelchel in asserting his claim of right before the trial court, and his failure to show any prejudice, we cannot say an unreasonable time elapsed.
Even if we assumed a 58-day delay as did the trial court, 58 days is still within state court standards providing for 60 days to try an incarcerated defendant. The record reflects the State's willingness to proceed to trial within the 60-day limits specified in the court rules. Accordingly, we conclude the time elapsed thus far, even in a worst case scenario, is not unreasonable under a constitutional speedy trial analysis.

CONCLUSION
We hold the trial court did not err by denying Mr. Whelchel's speedy trial motion under CrR 3.3(c)(5). Neither CrR 3.3(d)(3) nor CrR 3.3(d)(4) is applicable by analogy under these facts. No constitutional speedy trial violation is yet shown.
Affirmed.
SWEENEY, A.C.J., and KATO, J., concur.
NOTES
[1] The Ninth Circuit has entered an order holding their appeals in abeyance pending the outcome of this appeal. This seems extraordinary to us because unless the grant of habeas corpus is affirmed, no speedy trial issue is possible here. Nevertheless, we proceed "to serve the ends of justice." RAP 1.2(c). We note, opinions on questions of state law are normally certified to our Supreme Court. See RAP 16.16.