## DEAN *v.* STATE
[No. 164, October Term, 1953.]

*Decided July 27, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Alan H. Murrell* for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *M. Peter Moser, Assistant State's Attorney,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment entered upon a verdict of guilty on six counts of an indictment which, respectively, charged the defendant with permitting an automobile to be used as a place for selling lottery tickets, having lottery books in his possession, being a "second offender" in lottery law violations, keeping an automobile for gambling and permitting gambling in an automobile.

Before the trial below the defendant moved to quash the search and seizure warrant under which his person and automobile were searched and to exclude all evidence obtained thereunder. This motion was denied.

The questions raised by this appeal are these: (1) whether the application for the search warrant showed probable cause to believe that a misdemeanor was being committed within the territorial jurisdiction of the Judge to whom the application was presented and by whom the warrant was issued; and (2) whether the application showed probable cause to believe that the automobile described therein was being used in connection with violation of the lottery laws.

The search warrant was issued by a Judge of the Supreme Bench of Baltimore City. The application upon which it was issued referred to several streets but did not state that they were in Baltimore City. This, the appellant contends, is a fatal defect, since it failed to show that the alleged violation of law was being committed within that City, which was the area in which a Judge of that Court has "territorial jurisdiction." This objection is based upon Code (1951), Article 27, Section 328, which, insofar as here pertinent, provides:

"Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City * * * by a writing signed and sworn to by the applicant, that there is probable cause, the basis of which shall be set forth in said writing, to believe that any misdemeanor or felony is being committed by any individual or in any * * * place or thing within the territorial jurisdiction of such judge * * * or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such * * *, place or thing, then such judge may forthwith issue a search warrant directed to any duly constituted policeman * * * or police officer authorizing him to search such suspected individual, * * * place or thing and to seize any property found liable to seizure * * *, provided that any such search warrant

shall name or describe, with reasonable particularity, the individual, * * * place or thing to be searched * * *."

In this case the written application shows that it was made by a sergeant in the Department of Police of Baltimore City. It may safely be assumed that the judge to whom the application was made was aware both actually and as a matter of judicial notice that the ordinary territorial jurisdiction of that Department is the City of Baltimore. The application also showed that this officer had been seeking evidence of violations of the lottery laws for a period of some three and a half hours one morning, that while so engaged near certain premises on East 21st Street, he had seen the defendant enter an automobile bearing a designated license number and then drive to the vicinity of Bond and Monument Streets, that he later saw him enter premises on North Eden Street at two different street numbers, that he then saw the defendant go to an address on East 20th Street and thereafter saw him return to the first address on East 21st Street. The application also showed that another officer, acting under the direction of the affiant, had made certain observations of another man during a period of about two and a half hours on the previous day in the vicinity of Bond and Monument Streets. This second officer was not specifically stated to be a member of the Baltimore City Police Department, but since his activities detailed in the application were stated to have been under the direction of a sergeant of that force, it seems to require no imagination to conclude from that assertion that the subordinate officer was also a member of that Department.

The judge was clearly entitled to take judicial notice not only of the law with regard to the territorial jurisdiction of that Department but also that laws against lotteries and other forms of gambling are among those which it is the duty of that Department to enforce in Baltimore City. It seems to require no feat of deduction to arrive at the conclusion that the efforts of the police officers to obtain evidence of the violation of the lottery

laws which were set forth in the application were being carried on in the City where their official duties were to be discharged, and that what they saw in the course of those efforts took place in that City and hence within the jurisdiction of the judge to whom the application was presented. We think that a judge may make use of matters within the field of judicial notice and of reasonable inferences in determining whether the statements contained in a written application for a search warrant are sufficient to make it appear to him that there is probable cause to believe that an offense is being committed within his territorial jurisdiction. Compare *Asner v. State,* 193 Md. 68, 65 A. 2d 881, in which a warrant to search an automobile was upheld, although it did not specify that the search was to be made within the limits of the county in which the justice of the peace who issued the warrant had territorial jurisdiction. This Court observed "That would be presumed from the statute, authorizing its issuance."

In addition, we think that although it would have been far preferable that the application should have stated explicitly that the places mentioned were in Baltimore City, the judge who acted on the application might have taken judicial notice of the fact that there are streets in Baltimore City bearing the names stated in the application. There is a wide diversity of opinion on this question. It was referred to, but not decided, by this Court in *Wood v. State,* 191 Md. 658, at 670, 62 A. 2d 576.

A distinction on this subject which supports our view in the present case is made by some authorities between the knowledge which judges of the trial courts in the particular city may be thought to have with regard to the streets of that city and the knowledge which judges of other courts sitting elsewhere may possess.

Among the authorities supporting the view that judicial notice of the location of streets may be taken are the following: *Randall v. Commonwealth,* 183 Va. 182, 31 S. E. 2d 571; *Varcoe v. Lee,* 180 Cal. 338, 181 P. 223;

*Prince v. Crocker,* 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610; *Cascio v. State* (Ark.), 210 S. W. 2d 897; *Schultz v. Hinz,* 20 N. J. Super. 346, 90 A. 2d 19; *American Fidelity & Casualty Co. v. Williams* (Tex. Civ. App.), 34 S. W. 2d 396; *U. S. v. Spagnuolo,* 168 F. 2d 768 (2nd Circ.); and 20 *Am. Juris.,* Evidence, Sec. 54.

There are also a number of decisions to the contrary, among which are *People v. Strook,* 347 Ill. 460, 179 N. E. 821; *U. S. v. Jones,* 174 F. 2d 746 (7th Circ.); *Kennedy v. Kennedy,* 325 Mich. 613, 39 N. W. 2d 67; and *Doyle v. State,* 49 Okla. Cr. 422, 295 P. 237.

We think that there is no reason why a judge sitting in Baltimore City should have to close his mind to the fact which is well known in that community, that there are streets in the City known, respectively, as Monument Street, Bond Street, 20th Street, 21st Street and Eden Street. It is well known that the intersection of Bond and Monument Streets is well within the limits of Baltimore City.

In *Bratburd v. State,* 193 Md. 352, 356-7, 66 A. 2d 792, there is a strong intimation that not only may police officers make use of their "local familiarity" with the characteristics of a particular neighborhood in reaching their conclusions as to whether the activities which they observe involve a violation of the gambling laws, but that the judge who is asked to issue a search warrant may take judicial notice of such matters on the basis of any "local familiarity" with the neighborhood which he may possess.

If, as we hold he may, the judge adds this knowledge to that disclosed by or inferable from the application which we have already stated, there would seem to be more than ample information to make it appear to him that the place of the alleged offense is in the City of Baltimore.

In *Saunders v. State,* 199 Md. 568, 87 A. 2d 618, the question was the adequacy of the description in the warrant of the place to be searched, and not the adequacy of the statements in the application to show that the

alleged offense was committed in Baltimore City. This Court there said:

"The constitutional and statutory provisions demand that a search warrant shall contain a description of the premises to be searched definite enough to prevent any unauthorized and unnecessary invasion of the rights of privacy. It is an accepted rule that a description in a search warrant of the place to be searched is sufficient if it enables the officer with the warrant to locate the place with certainty. In this case the warrant described the place to be searched as the two-story brick dwelling at 2403 Frances Street. Ordinarily the description in a warrant of a house to be searched is sufficiently definite if it correctly states the street number of the house. *Steele v. United States,* 267 U. S. 498, 45 S. Ct. 414, 69 L. Ed. 757." It would seem that if a street number is enough to enable the officer to find the right place to search, the mention of familiar street names in the application should be enough to make it appear to a local judge that the place of the alleged offense is in Baltimore City.

The second question concerns the sufficiency of the allegations contained in the application to show probable cause to justify the search of the automobile in question.

The automobile itself was identified by make and license number and its use on July 3, 1953, by the appellant during the period while the police sergeant was observing him was described. At about 10:30 in the morning the appellant drove the car from the 700 block of East 21st Street to the vicinity of Bond and Monument Streets. Later, within a period of about an hour, between noon and 1 P.M., the police sergeant observed these actions: first, near Bond and Monument Streets the appellant received a small package from a man known as "Herbie," and put it under the front seat of the automobile, then he visited three different buildings— two on North Eden Street and one on East 20th Street— at each of which he spent about five minutes, and upon emerging from each of these places he removed a small

package or packet from his trousers pocket and put it under the front seat, on the front seat beside him or in the glove compartment; from the last of these places he drove back to the place on East 21st Street from which he had started several hours previously, on arrival there he removed several packages or packets from the seat, from under the seat and from the glove compartment and took them all into the house on 21st Street.

"Herbie" from whom the appellant (who is sometimes known as "Red" Dean) received the first packet mentioned above had been observed for a time on the previous day. During that time he had been seen to take some coins from a woman and to "go through the motions" of writing something down on a piece of paper. Later he was heard to refuse to accept "a quarter on 231" giving as his reason that "Red Dean has picked me up already."

The application for the warrant contained a statement by the police sergeant that "your affiant believes, founded upon experience with such violations that a lottery is being conducted in the said automobile and in the said vicinity [Bond and Monument Streets]." The application further states:

"The lottery carried on and known as 'numbers' requires that the play or slips be collected by certain people designated as runners and writers and then returned to the person or corporation conducting the game; and it is the belief of the affiant that the persons named, described and referred to herein are runners or writers and are actively engaged in the business of conducting a lottery."

It is true that the police officer who watched the appellant's actions on July 3rd did not actually see any lottery slips. However, the actions of the appellant fit very closely the description of the actions of others in cases in which this Court has held that there was a sufficient showing of probable cause to sustain the issuance of the warrant. The judge passing upon the

application may give consideration to the experience and special knowledge of the police officers who may apply for the warrant. *Bratburd v. State, supra.* Probable cause is to be determined by the judge who issues the warrant, and the facts relied upon to show its existence "are sufficient if they are such as to justify a prudent and cautious man in believing that the offense has been committed." *Fleming v. State,* 201 Md. 145, 149, 92 A. 2d 747; *Smith v. State,* 191 Md. 329, 62 A. 2d 287; *Lucich v. State,* 194 Md. 511, 71 A. 2d 432. As is said in those cases, probable cause is less than certainty or proof, but more than suspicion or possibility. The facts set forth as the basis for the issuance of the warrant need not be within the personal knowledge of the applicant, but may be verified by his oath based on information and belief, if the facts and sources of his information upon which his belief is based are stated. *Allen v. State,* 178 Md. 269, 13 A. 2d 352; *Smith v. State, supra.* The information furnished by Officer Richter was accordingly properly included, with the source clearly stated, in Sergeant Aires' application, which he verified "on information and belief."

Taking all of the facts stated in the application together we find that they were sufficient to support the conclusion of the judge who issued the warrant that there was "probable cause" for the issuance of a warrant to search the automobile in question.

*Judgment affirmed, with costs.*